Filed 6/2/21  P. v. Wheeler CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>MATTHEW DAVID WHEELER,<br><br>  Defendant and Appellant. | H047316<br>(Santa Cruz County<br> Super. Ct. No. 18CR00944) |

A jury convicted defendant Matthew David Wheeler of several felonies and misdemeanors arising out of two separate incidents of domestic violence involving his live-in girlfriend, C.C., and a third incident where he refused to comply with police officers after being pulled over for not wearing his seatbelt.  The trial court sentenced Wheeler to a total term of three years eight months in state prison.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

C.C. began dating Wheeler in 2013 and had a child, J.W., with him in December 2015.  They moved into an apartment in Santa Cruz when J.W. was one and a half years old.  After J.W. was born, Wheeler started getting angry with C.C. when J.W. or C.C. made too much noise while Wheeler was sleeping.  Wheeler would call C.C. "names[] [and] belittle" her.  Once a month or so, Wheeler would "kick [C.C.] out of the house" along with her belongings, telling her she had to "stay outside . . . and fend" for herself.  Wheeler would occasionally hit or punch her, as well as push and shove her.  When asked if there was "yelling," C.C. replied, "Very much so."

On November 27, 2017, C.C., J.W., and Wheeler were lying on a futon in their living room. C.C. and J.W. were watching videos on C.C.'s phone while Wheeler slept. Wheeler was awakened by the noise from the phone and he yelled at C.C. to " 'Turn that shit down.' " C.C. and Wheeler argued loudly about the volume, as well as that she was "not . . . in love with him anymore and how [her] phone was a problem." Wheeler grabbed the phone from C.C. and broke it in two with his hands. He then grabbed C.C.'s arms and shoved her face into the carpet to keep her quiet.

Wheeler let her up, and he and C.C. renewed their argument in the bedroom as he started getting dressed. The blinds on the window were open and Wheeler got upset because he did not want their neighbors to see them arguing. He grabbed C.C. by the arms and pulled her away from the window.

A neighbor was coming home and as she walked to her apartment she heard a man and a woman yelling. She looked up and saw Wheeler and C.C. struggling up against the bedroom window. Wheeler "seemed angry and [C.C.] seemed frightened." The neighbor went to her apartment and called 911. As she waited for police to arrive, she saw Wheeler get in his car with J.W. and drive away.

Santa Cruz County deputy sheriffs responded to the neighbor's 911 call and contacted C.C. C.C. "was crying, wiping her eyes, . . . and trying to regain her composure." It was difficult to obtain a statement from her because she was so emotional. One of the officers took photographs of bruises on C.C.'s left arm and left bicep and those photographs were admitted into evidence.

A criminal protective order was issued on January 11, 2018, requiring Wheeler to stay away from C.C. and J.W. as well as prohibiting Wheeler from possessing any firearms.

On February 15, 2018, C.C., J.W., and Wheeler went to the beach together and, after they came home, C.C. took a nap. She was awakened by Wheeler kissing her, but then he "said something about his spirits telling him that he had to get rid of me and take

2

my identity." Wheeler put his hands around her neck and squeezed so hard she could neither talk nor breathe. He let go after five to 10 seconds. Wheeler told her he was "going to put weights on [her] ankles" and take her to the wharf. He then began talking about C.C.'s husband who was murdered on New Year's Eve 2012. C.C. did not know why Wheeler brought that up.[1]

C.C. tried to escape, fearing for her life, but Wheeler caught up to her near his car. Wheeler was pushing her by the shoulder, "[n]ot hard, but just like, 'Get in the car now.'" J.W. had followed them downstairs and climbed into the front seat of the car. C.C. did not resist or say she did not want to get in the car, but felt she had no choice. C.C. did not want to leave her child behind so she got in the back seat.

Wheeler started driving and told C.C. that he was calling the police to tell them that she was involved in her husband's murder. Wheeler told the 911 dispatcher that C.C. "witnessed a murder," he had her "testimony on [his] phone," and he wanted to "turn her in." C.C. thought he was driving to the police station, but Wheeler told the dispatcher he would wait for police at a nearby gas station. As they drove, C.C. saw Wheeler had his gun on his lap.

Wheeler pulled into the gas station and stopped by one of the pumps. C.C. tried to get out of the car, but Wheeler would not let her, pressing his body against the door to keep it closed. The gas station attendant saw that C.C. "looked very upset and scared," so he called 911. C.C. told Wheeler that she needed to use the bathroom or needed something to drink, but he refused to let her out of the car. As C.C. moved from the passenger side to the driver side to try and escape, the gas station attendant saw Wheeler go back and forth around the car to block her. At some point, J.W. got out of the car and

---

[1] Wheeler introduced an audio recording of a "Facebook Messenger message" from 6:13 p.m. on February 15, 2018, in which C.C. says the following: "… for a murderer. I didn't murder anybody. Juero murdered somebody, OK?"

was walking around by the pumps by himself but one of the customers grabbed him and carried him into the gas station store.

When police arrived, Wheeler approached them, which allowed C.C. to get out of the car. She called out that he had a gun, so police ordered him to get on the ground. Wheeler did not get on the ground, but instead kept moving around. He took his shirt off and said police could not shoot him "because he's a U.S. citizen." When a second police car arrived, Wheeler approached that officer and after again not initially following instructions, eventually turned around and was handcuffed. Wheeler said he was trying to turn C.C. over to police and confirmed that he had a .40-caliber handgun in his car. When police searched the vehicle, they found a semi-automatic "Glock-style handgun" beneath the rear seat on the driver's side.

When police questioned Wheeler, he said that C.C. had called a friend to obtain some drugs and he overheard her say something about her witnessing or knowing something about her husband's murder. Wheeler told C.C. she needed to talk to the police about that, and so he put J.W. into the car and escorted C.C. back to the car, placing both hands on her shoulders, when she tried to walk away.

Police obtained an emergency protective order on behalf of C.C. and served it on Wheeler that evening before transporting him to county jail.

On May 10, 2018, Santa Cruz County Deputy Sheriff Travis Huntsman saw a man, later identified as Wheeler, driving a vehicle without wearing a seatbelt. Huntsman began to follow the vehicle and saw Wheeler "discreetly" fasten his seatbelt. The deputy activated his lights and siren to stop the vehicle, but Wheeler continued driving, turning a corner before stopping about halfway down the next block.

Huntsman got out of his vehicle and started toward Wheeler's car, but Wheeler got out and started yelling at Huntsman, "asking why I stopped him." Huntsman repeatedly asked Wheeler to get back in his car and remain there, but Wheeler kept yelling and walked onto the front lawn of the house where he had stopped his car. Wheeler ignored

4

Huntsman's orders to return to the vehicle and walked into the house instead. Huntsman radioed for backup and approached Wheeler's car, at which point he saw J.W. sitting in the front passenger seat. J.W., who appeared to be about three years old, was secured by a seatbelt, but was not in a child car seat.

Wheeler's mother came out of the house, followed soon after by Wheeler, who "was yelling something to the effect of why did I stop him in front of his house." Huntsman felt threatened by Wheeler's demeanor and pulled out his taser, advising Wheeler that he would tase him unless Wheeler calmed down. Wheeler went back into the house.

Other deputies arrived just as Wheeler again came out of the house. One of the deputies moved between Wheeler and the house and ordered him to get on the ground. Wheeler initially refused to comply, but after numerous commands, he turned around and allowed deputies to handcuff him.

Wheeler was charged by amended information with the following offenses: (1) misdemeanor vandalism (Pen. Code,[2] § 594, subd. (a)(2); count 1); (2) misdemeanor false imprisonment (§ 236; count 2); (3) misdemeanor battery (§ 243, subd. (e)(1); count 3); (4) felony kidnapping (§ 207, subd. (a); count 4); (5) felony criminal threats (§ 422; count 5); (6) felony false imprisonment (§ 236; count 6); (7) felony assault by means of force likely to result in great bodily injury (§ 245, subd. (a)(4); count 7); (8) two counts of felony unlawful possession of a firearm (§ 29825, subd. (a); counts 8, 10); (9) felony carrying a concealed firearm in a vehicle with a special allegation that Wheeler was not the registered owner and the firearm was loaded (§§ 25400, subds. (a)(1), (c)(4), 25850, subd. (c)(6); count 9); (10) two counts of misdemeanor violation of a protective order (§ 166, subd. (c)(1); counts 11, 12); (11) misdemeanor

---

[2] Unspecified statutory references are to the Penal Code.

resisting a police officer (§ 148, subd. (a)(1); count 13); and (12) infraction of failing to use a child seat restraint system (Veh. Code, § 27360, subd. (a); count 14).

The jury found Wheeler guilty on counts 1, 3, 4, 6, 8, 9, 10, 11, 12, and 13, and found true the special allegation in connection with count 9. However, the jury was unable to reach a verdict on counts 2, 5, and 7. After the court declared a mistrial on those counts, the prosecutor dismissed them. The trial court found Wheeler guilty of the infraction in count 14.

At the September 17, 2019 sentencing hearing, the trial court sentenced Wheeler to a total term of three years eight months in prison, consisting of the lower term of three years on count 4 and a consecutive term of eight months (one third the middle term of two years) on count 8. The court imposed middle term sentences of two years on counts 6, 9, and 10, but stayed those sentences pursuant to section 654. On counts 1, 3, 11, 12, and 13, the trial court sentenced Wheeler to concurrent terms of 80 days, deemed served. Wheeler was awarded total credits of 85 days, consisting of 43 days of custody credits and 42 days of conduct credits (§ 4019). The trial court imposed a $200 fine on count 14 and ordered that it was deemed paid based on his custody time.

The trial court imposed a $1,200 restitution fund fine (§ 1202.4, subd. (b)), a $1,200 parole revocation fund fine (suspended pending successful completion of parole) (§ 1202.45), a $400 court operations assessment (§ 1465.8), and a $300 conviction assessment (Gov. Code, § 70373). Wheeler was further ordered to pay restitution to C.C. in an amount to be determined if she presented a claim.

Appellate counsel has declared that he notified Wheeler both of his intentions to request independent review under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and of Wheeler's right to file written argument on his own behalf. We notified Wheeler of his right to submit written argument on his own behalf but have received no response from him.

We have reviewed the record under *Wende*, *supra*, 25 Cal.3d 436 and *People v. Kelly* (2006) 40 Cal.4th 106.  Concluding there is no arguable issue on appeal, we affirm the judgment.

## II.    DISPOSITION

The judgment is affirmed.

_____

Greenwood, P.J.


WE CONCUR:




_____

Grover, J.








_____

Danner, J.




People v. Wheeler
No. H047316